Welcome to Day 2 of the West Court Room Panel. I'm honored to be sitting with Judge Higginbotham and Judge Costa this week. We've got a full slate of cases this morning. We'll probably take a short break after the third case, give or take, just a short recess. Other than that, we're going to roll through. I won't belabor the point except to say please stay in that setup. Sometimes it's a little difficult to hear, particularly in responding to questions. If you do that, things should be fine. With that, we'll call the first case, USA v. Zamora-Lopez. Judge Higginbotham May it please the Court, my name is Scott Martin. I represent Mr. Zamora in this appeal of the 48-month sentence that he received upon his conviction for illegal reentry. Mr. Zamora contends that the District Court plainly erred when it applied a 16-level crime of violence enhancement under the 2015 version of Guidelines Section 2L1.2 based on his prior California conviction for resisting an executive officer. In particular, he argues that the California offense does not fall within the use of force prong of the crime of violence definition because the offense does not require violent, destructive force. I'll first address the error in its plainness, then I'll address the third and fourth prongs of plain error review. As we know, the guideline commentary defines crime of violence in relevant part as any other offense that has as an element the use, attempted use, or threatened use of physical force against the person of another. Let's assume that that's correct. What do we do with the plain error rule? The plain error? Yes, Your Honor. What do you say to that? What do I say to the plain error doctrine? In terms of... It's an application to you, your case, yeah. Okay, Your Honor. The plainness, our argument is that in light of the well-settled principles in Herrera-Alvarez and Dominguez that force means violent or destructive force... You think it obvious? Yes, Your Honor. But you didn't object. Nobody's objected to it. That's right, Your Honor, and that's why we're on plain error today. I understand that, but I guess the question is why is it... What are we lacking in objections here? Your Honor, we made a mistake, and that's why we're asking the court to correct that mistake on plain error. Does that mean you didn't see it? Were you counsel below? No, Your Honor. This case came out of one of our offices in Laredo. So they couldn't see this? No, Your Honor. Our counsel didn't see the objection, and neither did the district court or probation or the prosecutor. What else could they be looking for other than sort of scouring around for, you know, these kind of deals? I mean, what else distracts counsel below besides the evident sentencing of the defendant, et cetera, et cetera? So if it comes here, it's palpable neon sign sized error, yet it was invisible down below. So we trigger plain error, and here, you know, it's sort of all over. You know, it's worrisome. Yours isn't the first one, but, you know, there's a disease called the vanishing objection, and so it makes us curious. We're going to go tortuously through prong three and four on why this is an error, if at all, and then does it affect his substantial rights, and then is it going to affect the integrity of the system? Why shouldn't the system be able to depend on the first while counsel below noting something that affects the client's sentencing? You get my point? I understand, Your Honor. We made a mistake in defense of our trial attorneys. The problem is you're consistently doing it. Your Honor, I actually . . . Mistakes generally happen from time to time. I've been known to make a few of them, but what we're seeing is a consistent pattern of the public defenders coming in on plain error when the public defenders were some of our best young lawyers. Coming on plain error, it didn't object, and one begins to wonder, you know, if you've been around a courthouse long enough, you pick up some of that stray language called sandbagging and so forth. Your Honor, I believe . . . There is some maneuvering here, and I don't . . . I accept your explanation, and I don't mean otherwise, but I don't want you to understand that you're saying that to a court that's increasingly skeptical of those kinds of explanations. And, Your Honor, my . . . And that's a message you won't take home. I understand, Your Honor. I do believe the Supreme Court and Hernandez compared lawyers who would forego a sentencing objection so that they could get a better chance of winning on plain error are like unicorns. They just don't exist. We're doing our best to raise these arguments, and I think in Escalante-Reyes, the en banc opinion, this court did acknowledge that most of these errors are inadvertent. They're not sandbagging trying to get a second . . . There's only so much inadvertence. Come on. I mean, you've given us the company line, but, you know, we've been around the block. Born at night, but it was a mistake. You know, we're getting these, so even something that might be somewhat open on prong three and prong four, that's just not getting it. I mean, it's not like you've got a hundred clients standing there. It's one person. It's the same California statute. It's the same thing here. And we've got good lawyers who are trying, so we're going to belabor the point, but that company line isn't getting it, and we don't need the Supreme Court to tell us what we're seeing for ourselves. I mean, we get tons of this. Any panel you pick, we're all getting this, and they're all down the low end, so here we go trudging through a Florida statute, a New Jersey statute, a New York statute, California, when the reason for the objection is to alert the trial judge, so the judge in the first instance, if there is a problem, can deal with it. That's the point. You know, we'll do our job, but the point is saying a mistake, you know, is like stepping on my foot saying, I'm sorry. Well, yeah, but it still hurts. I understand, Your Honor, but the point of plain error review is that the forfeiture rule does bend to prevent a manifest injustice. Well, the point of the contemporaneous objection rule is to insist that the trial counsel give the objection at a time when it can be corrected or not. And it is a powerful rule to secure the institutional legitimacy of the United States District Court. It's not a pass-through check-in station. It is a United States District Court, and they decide cases. It's not just a check your ticket and run to New Orleans. I understand, Your Honor. I'm being a little tough on you. You are the messenger, and I respect that. One last case of our office, Your Honor. The cases that the Fifth Circuit see are just a very narrow slice of cases where we have either not won our objection or they're on the board or are doing a very excellent job. I think the point you're missing, and we're going to get off of it, there's a universe of cases. Probably the difference between relief of a defendant and no relief is the fact that there was no objection. When we see cases in which if there had been an objection, it is highly probable that relief might be there. Whereas, on the other hand, there's no objection, and there is no relief because of the prong. I think that's the piece that's missing, that from the standpoint of having a client to represent, it frequently can make a difference. Not every case. Some cases would be the same, but there are some cases where the absence of an objection when you change the standard of review makes a difference. It's just something to think about rather than . . . We don't disagree with that. Good. Now, tell us why, A, it is an error, and B . . . Okay. I'll go quickly through the error . . . Looking at it, it's all okay. Your Honor, we know from cases such as Herrera, Alvarez, and Dominguez that force does not include offensive touching. In light of these principles, our argument is that it is plain, that the error here was plain. He pleaded guilty to resisting an executive officer in violation of California Penal Code Section 69. On whether it's plain or obvious, it seems to me the point is, if a lawyer had said something or if the court on its own had said something, a plain or obvious error is one where everyone would have said, oh my gosh, yeah, I can't believe we didn't think of that. Of course, this enhancement shouldn't apply. Whereas, I think it's hard to say it's plain or obvious if it's an issue where the district court might have said, you know what, I need some briefing on this. I'm not sure. Submit a brief and then we'll come back next week and I'll try to figure this out. And why doesn't this fall into that latter category? Because there's no case on point which there doesn't need to be, necessarily, but you also get into this issue of, well, is California really applying it to cases like this in practicality? Why is this a case where everyone would have said, oh my gosh, of course, I can't believe we didn't catch that? Well, we have, Your Honor, as I said, we have Herrera, Alvarez, and Dominguez, which are cases that we all know that offensive touching does not qualify. That's been the law for some time now. Then we have Ninth Circuit cases, two published opinions saying that de minimis or force or offensive touching qualifies under this California statute. We also have California intermediate court cases such as Peeble v. McRae, which I've cited in my briefs. Any of those published? No, Your Honor. And apparently the California courts don't publish many of these. But as soon as they say that they're unpublished, aren't, shouldn't be cited, right? That's true, Your Honor. But in a case, our own case, Martinez, well, first of all, those California court rules don't apply to Federal courts. And in Martinez, which is an unpublished case from 2014 of this Court, this says, this Court said that we have previously considered unpublished State cases in conducting the categorical inquiry. This makes good sense in determining the actual application of a statute. A conviction is a conviction regardless of the manner in which it is reported. But have we said that those unpublished cases can show that it's plain and obvious error? No, Your Honor. We don't have a case saying that. But I don't see why that distinction would make a difference, because these decisions of the State appellate court show how or are indicative of the numerous instances in which the State's prosecuting authority has secured convictions based on this overbroad conduct that we're arguing about. And — Well, and you've also got the pattern charge. I mean, it seems to me that that's — Right. That's probably better than the unpublished cases, but — That's true, Your Honor. And the pattern charge is cited in those Ninth Circuit cases, Flores, Lopez, and Lee as well. So, Your Honor, our argument is that in light of the well-settled principles of law in this circuit as applied here, which is clear in light of the Ninth Circuit cases and these California cases I've cited, the error is plain. Your Honors, without the 16-level enhancement, the guideline range would have most have been 18 to 24 months. The district court relied on the incorrect range and elected to stay within that range and sentence him closer to the low end of 48 months. The court did not state that it would have imposed the same 48-month sentence as an above-guideline sentence. So under Martinez-Rodriguez, which discusses Molina-Martinez Supreme Court case, because the record's silent as to what the district court might have done had it considered the correct guideline range, this is enough to show an effect on substantial rights, the third prong. Now, the fourth prong, Your Honors, this Court has said in Martinez-Rodriguez that it's a bit of a balancing act between the degree of the error and the particular facts of the is 24 months. The 48-month sentence is 24 months or 100 percent higher than the top of the correct range of 18 to 24 months. This 24-month disparity is far greater than the 8-month disparity in that case, Guillen-Cruz, that I cited in my 28J letter, where this court recently rejected the government's argument that an 8-month disparity is a small degree of error. This 24-month disparity is also greater than all of the disparities cited in the Miller case, which I've cited in my brief, which is an unpublished case, where this court cited these cases in support of its statement that we have vacated sentences involving errors. In the final, the fourth prong inquiry, can we consider that this defendant's California defense actually did involve physical assault on an officer? Because the district court, even if it's not categorically a match under 3553 under the general sentencing discretion, can consider all that. So should we consider that under the fourth prong? Your Honor, I think you can consider it, but the district judge in this case, who was in the best position to judge his history and characteristic, took that into consideration and chose to sentence him, quote, closer to the low end, did not say that the judge did not say that she would have imposed this same sentence as an above-guideline sentence. The court did this because it was his first illegal reentry, and the court also said that she thought that the things that he did in the past were, quote, probably because of his severe drug addiction. He had a serious problem with methamphetamine in the past. And, Your Honors, I would like to leave you with this one thought, and that is that the Fifth Circuit does take a different approach from some other circuits on the fourth prong. The Tenth Circuit, for example, writing for the Tenth Circuit Your brief never talked about the third prong, did it? Yes, Your Honor, we did. Our opening brief did talk about the third prong. I don't believe that the government talked about the third prong, but our brief did. I would like to leave you with this. Justice Gorsuch, when he was still Judge Gorsuch, wrote in one case in the Tenth Circuit called Savion Umana, that we can think of few things that affect an individual's substantial rights or the public's perception of the fairness and integrity of the judicial process more than a reasonable probability that an individual will linger longer in prison than the law demands only because of an obvious judicial mistake. And, Your Honors, that's why, for that very reason is why the Tenth Circuit finds that the fourth prong is presumptively satisfied in cases like this. And for those reasons, Your Honors, we hope that you exercise your discretion to grant relief in this case. Thank you. You reserved your rebuttal time. Yes. All right. Ms. Offenhauser. The United States sleep at the wheel also. I'm sorry, what, sir? When this is all going on down in the trial court, the government's just sitting there in neutral as well. I understand the objection as such is for the defense, but when you march in the court and say, I'm representing the United States of America, the judges tend to rely on the government, you know, to keep them out of Dutch or point out some things, so on and so forth. So we equally kind of find in a whole slew of these, not only is there not the objection on the other side, but kind of sort of, you know, point it out, et cetera, you know, so that this thing is done if the government is there, quote, to do justice, close quote, you know. Yes, sir. I understand. We're an equal opportunity message giver. Yes, sir. Starting out with your court statements, the district court, I mean, the 9th Circuit decision came down in 2012 basically saying that It puts us in a courtroom where things get worse every year. I'm not sure why, but just keep your voice up if you want. You know, you don't have to just, if you just Just speak up? Yeah, if you just speak up, it'll pick you up, yeah. I have sometimes difficulty speaking, so Well, that's why I gave my opening admonition about the sound, because you're talking conversationally because you're close and we understand it, so you have to kind of focus on the fact that we're recording it and a lot of times what's happened, the recording is not getting it all later, even though conversationally we may hear it. So if you, I like to say, give us your theater voice. Okay, I'm giving you my theater voice. Regarding your first comments is that the district court gave the defendant a fair opportunity to raise an objection at sentencing. When, and I'll get to this in a minute, but as a lead in, when the court stated to Zamora that you seem like a very dangerous individual, the court made the point of telling his counsel that it was not giving him any additional points because the offense was plus 16 and the operative words, and nobody is fighting over it. You know, the, the, Lopez Zamora came down in 2012, in 2014, the, the Fourth Circuit addressed the, the Maryland statute, which is a comparable statute to this en banc and said that the Maryland statute is, does not equate to a crime of violence. So the, the, the issue was there and when the district court is making its, its statements, such as I'm not giving you any additional points because you are 16 level and nobody is fighting about it, if they had raised the objection at that point, that would basically have alerted the district court to basically make more express statements of why the court is considering the 3553A factors and the possibility or probability or likelihood, whichever words you want to use, of an upward variance. The court ended up imposing, of course, as you all know, a four-year statute, which was four years. And what the court did, I'm sorry, I lost my train of thought. Sorry. Sorry. So you take the position there's no error? Or you on the fourth prong. As Judge Costa noted, it's virtually difficult to argue that the use of force of element, element of section 69 does not include mere offensive touching when the jury instructions setting out the elements of the offense, the second element of which is, is resistant is accomplished by the use of force of violence and then references directly to the battery definition of use of force, which of course includes offensive conduct, which does not equate, which equates to physical contact, not physical force and not a crime of violence for purpose of the guideline application. Going to, directly to the fourth prong, as the court notes that even if it's not a crime of violence for any level enhancement, it is, it is a crime of violence factually and the district court acted well within its discretion in considering it as such. Under 18 U.S.C. 3616, I mean, I'm sorry, 18 U.S.C. 3661, there is no limit placed on the district court's consideration of information concerning the background, character and conduct of the defendant for determining the appropriate sentence. And that is exactly what the district court did in this case. I thought she applied the 16-point enhancement because there was no objection. She found it was a categorical match and applied the 16 points. She didn't say, oh, well, I'm not worried about the 16 points because this is what he actually did regardless of how the guidelines were. That is true. That is true. The district court did not make an express statement that I would have opposed the same sentence even if the 16-level enhancement. And you're not arguing prong three, just, you're just arguing, aren't you, in your brief though, you're also arguing prong two on obviousness, right? Or no? Well, your brief does argue that. I guess I'm asking what you're arguing now. I don't know that I can surpass the clear and obvious test. I mean, what is, it's clear and obvious in the sense that you have a pattern jury instruction that references crime of violence as including offensive touching and this, the law is pretty well settled that it doesn't equate to a crime of violence for purpose of the guideline application. But what is not clear and obvious is that. Probably the sentencing range if you didn't have the 16-point enhancement. It would be between, between, it would be a, I'm sorry, I'm looking at this, without 16, it would be between 18 and 24 months. I'm sorry? It would be between 18 and 24 months without the 16-level enhancement. And the guidelines that were applied were what? I'm sorry, sir? And the guidelines that were applied, what was the range? It was 46 to 57 months. And there's a, there's a substantial disparity. Yeah. Yeah. I have to admit that. The question is, the question is, is that is on the face of the record the district court's intent to impose a four-year sentence clear on the face of this record? And when you're under the fourth prong, which of course is within your discretion to grant relief or not relief, is the district court's intent to basically impose a 3553 sentence, whether it's a guideline, our focus is on the 3553 elements. And what she does is she considers everything in this record. She found, looking at his criminal history, she found it was recent and serious. We're not talking about, you know, just a 10 or 15 year ago, but we're talking about an offense that you committed in 2014, which was basically four months before you get deported the second time. And the way to explain what the court is thinking is to quote what she says. And when I look at the facts of our particular event, they are shooting tasers and cartridges at him and he keeps charging. The officers had, they, the officers had nothing they can do to stop him. He seems like a very dangerous individual. That was not the court's only concern. The court expressed its concern that you have, you have numerous encounters with law enforcement, you have three prior drug convictions, you have a, what did she call it, a severe drug addiction. You have two prior deportations and you return lawfully, unlawfully to the United States within six months. These are the things that I am considering and I am imposing a 46, I mean a 48 month, four year sentence because I determined that this was appropriate punishment for your, your offense considering as Congress instructs me to do your, your background, your character and your conduct for your prior and your, your recent. One of the things that the court also said, I mean the court, the court also did the, I guess the full panoply that district judges do. She considered his arguments and I'm going to give you, she said I'm going to give you credit for, for, because this is your first ever illegal reentry offense. But what she did also was note that he absolutely should have been prosecuted before this offense, for the, before the first conviction he could have been prosecuted under 1325 for illegal entry. Before the second conviction he could have been prosecuted for his first illegal reentry. The, the problem is when the sentence or the guideline that shouldn't have been imposed doubles the guidelines, I just think at that point most of our cases do recognize the error under the, the fourth point. Do you, do you have cases where there was a doubling of the sentence based on the erroneous enhancement but we didn't exercise our discretion? When the court was very clear that the, the court would have imposed a, a. The same sentence which, which. Guideline sentence. Which didn't happen here but also that, that's about the third prong. Then, then the defendant can't show substantial prejudice. Right. But I think the government's not arguing that. You can see that there was prejudice here so it's all about the, the discretion of the fourth prong. And, and it just seems to me our cases, even with less than doubling, but I, if there's a doubling. You know, it's, we're in a difficult position on, it's within your discretion to send it back. The bottom line is, in my view, is that there is a high probability based on everything that the district court said that if you send it back the judge is going to impose the same sentence and, because that is clear on the rec, face of the record itself. I mean, essentially, your honors, that's my best argument. See, that goes all the way back to the original point, you know, not belaboring it, of the significance of the objection. Because if the objection is made, the judge is alerted and if the judge notes that but nonetheless says, you know, because of A, B, C, D, and E, I'm giving you this sentence, then we're never here, or at least the defendant's appealing on straight up, but we're not guessing at whether the judge would have done the same sentence or not. Now, we have cases where the judge has said, you know, what they would have done, da, da, da, da, da, and sometimes the results, you know, a little bit differently noted, but as Judge Costa says, as here, A, there's no such language, B, there's a big gap between what the sentencing, you know, would have been and so who knows, you know, what the judge might have done had they been alerted in the first instance. And many of the judges are very savvy, if you will, for, you know, putting in the record all the other considerations that they may have. It may be relevant conduct, I mean, a whole panoply, as you say, from a defendant's background, which might well warrant, you know, the sentence. What's the best case you can urge in, as Judge Costa says, every case is different, but in a case where there's no strong argument about error and the prejudice, but where, you know, we affirm the sentence anyway. Can you point to one right off the end? To point to an actual case? Yeah. No, sir. I mean, a lot of times, we don't get to the fourth prong. Right. You know, and the ones that we do, we go back, okay, just asking. I mean, it's my fault if there's one out there and I haven't found it. No, no, no. Yeah. No, just asking. I mean, you know, we get a lot of these cases, as mentioned, and we all try to keep up with them as best we can. There's just a little bit of a difference, you know, in the different cases, trying to weave them through, but certainly where the sentencing gap is real large, you know, that kind of jumps out and so forth. Okay. I mean, we've got your brief in the case that you cited. I just wondered if there was a case that came readily to mind. Let me ask you about the pre-sentence report. What did the PSI say about this issue? About this? Yeah. The district judge had a PSI before him. What did it say about it? What did it say about a 16-point enhancement? Well, the PSR said that the 16-level enhancement was appropriate based on his 2014 conviction. Is that your question? That has to be one that has an element that attempted use or threatened use of physical force against the person of another. Right. And there's no mention of that element? No, sir. So they just treated the conviction as a generic violation of the law? There is no discussion on why that is. What the PSR does is set out factually that it is a crime of violence. And what the PSR does is give you the statute, and the statute, of course, has use of force or violence written as an element in the statute. But did the court, did the probation officer alert the district court? Well, did they have any information in there about what the conduct was that was behind this conviction that is going to be used for the 16-point enhancement? Oh, of course. The PSR set forth that his wife called the police department and ---- But this is the conviction for which you're talking about. This is the conviction for which I'm talking about, yes, that his wife called the police department, the police department came, that he ---- That's the conduct beneath it. But the question is, the statute says that we're talking about a prior conviction, and the question is, what was he convicted of? And you can't answer that question without looking at the actual felony conviction. Is that right? That is. Whatever you may say that the conduct was, the question is, what was he charged and convicted of? He was charged of convicted of, based on the judgment of resisting arrest, which would have been the second prong under the California statute, Section 69, resisting an officer in the ---- Am I not understanding the question? I'm probably not being clear about it. Thank you. If the Court has no further questions. All right. Thank you. Mr. Martin, rebuttal if you wish. Your Honor, from your questions, I can tell you I understand our position. Unless you have any further questions, I'll rest on my briefs. All right. Thank you, sir. Thank you. Thank you to both sides. The case will be submitted.